**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BNK 2018-BNK13 LLC 10 EAST 34TH STREET LLC,<br><br>Plaintiff,<br><br>- against -<br><br>10EAST34TH, LLC, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, and "JOHN DOE NO. 1" TO "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>Defendants. | Case No. 26-cv-6952 |

**VERIFIED COMPLAINT**

Plaintiff BNK 2018-BNK13 LLC 10 East 34th Street LLC ("**Plaintiff**" or "**Lender**"), by and through its attorneys, Alston & Bird LLP, alleges and states its verified complaint as follows:

**NATURE OF ACTION**

1. This diversity action involves Plaintiff seeking, *inter alia*, the appointment of a receiver and to foreclose a commercial mortgage in the original principal amount of $37,500,000.00 that is secured by certain real property and improvements located in the State of New York, County of New York, with a tax map designation of Block 863, Lot 75, commonly known by the street address of 8 East 34th Street a/k/a 8-12 East 34th Street New York, New York 10016 and as more particularly described on **Exhibit 1** annexed hereto (collectively, the "**Premises**") and incorporated fully herein by reference.

2. Defendant 10East34th, LLC ("**Borrower**"), has defaulted under the terms of its Loan (as defined herein) by failing to make the required monthly payments of interest due on April 1, 2026, and each month thereafter. Pursuant to the express terms of the Loan Documents (as

defined herein), Plaintiff has accelerated all amounts due and owing under the Loan and Loan Documents and has the right to foreclose its mortgage.

3. As the Premises constitute Borrower's sole asset and Plaintiff's sole security for the Loan, Plaintiff will be irreparably harmed absent the appointment of a receiver during the pendency of this action. Plaintiff's investigation has revealed that its occupancy at the Premises has declined substantially over the last two years and that the lead tenant has failed to pay rent to Borrower for several months. Moreover, the Loan Documents expressly entitle Plaintiff to the appointment of a receiver for the Premises upon the occurrence of any default by Borrower.

4. By this action, Plaintiff seeks, among other things, to foreclose the lien of the Mortgage (as defined herein), to foreclose the lien of the NY and DE UCC-1s (as defined herein) on the Collateral (as defined herein), to take possession of the Premises, and to have a receiver appointed to manage the Premises and collect the rents generated therefrom during the pendency of this action,

**PARTIES, JURISDICTION AND VENUE**

5. Plaintiff is the current owner and holder of the note, mortgage, and balance of the loan documents that are the subject of this action and is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at c/o Torchlight Loan Services, LLC, 90 Park Avenue, New York, New York 10016.

6. Plaintiff's sole member is Wilmington Trust, National Association ("**Trustee**"), as Trustee for the Benefit of the Registered Holders of BANK 2018-BNK13, Commercial Mortgage Pass-Through Certificates, Series 2018-BNK13 (the "**Trust**") (Trustee, solely in its capacity as trustee of the Trust, shall be referred to hereafter as "**Wilmington**"). The Trust is a commercial

mortgage-backed securities trust.

7. Because the Trust is a traditional trust, its citizenship for diversity purposes is determined by the citizenship of its Trustee. Trustee is a national banking association with its designated main office located in Wilmington, Delaware. Accordingly, Plaintiff is a citizen of Delaware.

8. Upon information and belief, Borrower is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, with a principal place of business at 3750 Garden Avenue, Greenwood Village, Colorado 80121.

9. Upon information and belief:

(a) Borrower's sole member is 10East34th Mezz, LLC, a Delaware limited liability company;

(b) 10East34th Mezz, LLC's sole member is 10East34th Holdings, LLC, another Delaware limited liability company;

(c) 10East34th Holdings, LLC has two members, Simeon Derenshteyn ("**Derenshteyn**") and Elena Gilman ("**Gilman**");

(d) Derenshteyn and Gilman are both individuals domiciled in Colorado.

10. Based on the allegations in Paragraph 9, *supra*, Borrower is a citizen of Colorado.

11. Plaintiff joins Borrower as a party defendant herein because it is the obligor on the subject note, mortgagor of the subject mortgage, and owner of the Premises and to extinguish any interest that it has or may have in and to the Premises.

12. Defendant New York City Environmental Control Board ("**ECB**") is a administrative adjudicatory body that holds hearings for violations across several New York City

agencies. Because ECB was created and exists under the laws of the City of New York, ECB is a citizen of New York. ECB is made a party defendant as a judgment creditor of Borrower as described on **Schedule A** attached hereto. ECB is the holder of a lien or liens on account of those judgments against Borrower, as described in Schedule B, which liens are subject and subordinate to the lien of the mortgage being foreclosed herein. ECB is made a party defendant herein solely for the purpose of foreclosing those liens, if any, against the Premises which accrued, or may accrue, subsequent to the lien of mortgage being foreclosed herein by virtue of such judgment liens which are or may be due or which become due to ECB from any owner of record of the Premises and to extinguish any such right, title, claim or interest ECB may claim in all or any part of the Premises.

13. John Doe No. 1 to John Doe No. 100, inclusive, are fictitious and unknown to Plaintiff. Plaintiff names them as defendants herein to designate any and all tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon, *inter alia*, all or any part of the Premises.

14. Based on the foregoing, this Court has diversity jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a) because it is a dispute between citizens of different states and, as described in Paragraphs 17-21, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the Premises is situated in New York County, New York.

16. Further, pursuant to the express terms of the Loan Documents (as defined herein), Borrower and Guarantors have irrevocably consented to the jurisdiction and venue of this Court. (*See, infra,* Ex. 2, § 11.3(B); Ex. 3, Art. 9(B); Ex. 4, § 13.1(B)).

## FACTUAL BACKGROUND

### A. The Loan Documents

17. Pursuant to that certain Loan Agreement dated as of July 6, 2018 (the "**Loan Agreement**"), executed by and between Borrower and Morgan Stanley Bank, N.A., a national banking association ("**Original Lender**"), Plaintiff's predecessor-in-interest, Original Lender made a loan to Borrower in the original principal amount of $37,500,000.00 (the "**Loan**"). A true and correct copy of the Loan Agreement is annexed hereto as **Exhibit 2** and incorporated fully herein by reference.

18. To evidence its indebtedness under the Loan, Borrower, *inter alia*, executed and delivered to Lender that certain Amended, Restated and Consolidated Promissory Note dated as of July 6, 2018 (the "**Note**"), in favor of Original Lender in the original principal amount of $37,500,000.00. A true and correct copy of the Note, with three allonges firmly affixed to it by staple, is annexed hereto as **Exhibit 3** and incorporated fully herein by reference.

19. Pursuant to the Note, Borrower agreed, *inter alia*, to pay to the order of Original Lender the sum of $37,500,000.00 plus interest at a rate of 5.34% *per annum* (the "**Interest Rate**") as set forth in Section 1.1 of the Loan Agreement.

20. Section 2.3.1 of the Loan Agreement provides that Borrower shall make monthly payments of interest only in 120 consecutive monthly installments on the first day of each month (the "**Monthly Payment Date**") beginning on September 1, 2018. On August 1, 2028 (the "**Maturity Date**"), all unpaid principal, accrued and unpaid interest and all other amounts due under the Loan Documents (defined below) (collectively, the "**Debt**"), were to be due and payable in full, unless earlier accelerated.

21. As collateral security for the payment of the Note, Borrower executed,

acknowledged and delivered to Original Lender that certain Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement dated as of July 6, 2018 (the "**Mortgage**"), pursuant to which Borrower, *inter alia*, agreed to coordinate and modify the liens of the Existing Mortgages (as defined in Schedule A to the Mortgage) into a single first priority lien on the Premises in the original principal amount of $37,500,000.00. A true and correct copy of the Mortgage is annexed hereto as **Exhibit 4** and incorporated fully herein by reference.

22. On August 14, 2018, Original Lender caused the Mortgage to be duly recorded against the Premises in the Office of the City Register of the City of New York (the "**City Register's Office**") as City Register File Number ("**CRFN**") 2018000272852 and the mortgage recording taxes to be duly paid.

23. Section 1.3 of the Mortgage provides that the Mortgage shall be deemed to be a security agreement within the meaning of the Uniform Commercial Code, which grants to the holder of the Mortgage a security interest in, *inter alia*, the Property as defined in the Mortgage including, but not limited to, the Fixtures, the Equipment, the Personal Property (all as described and defined in the Mortgage), and such other property that may be subject to the Uniform Commercial Code (collectively, the "**Collateral**"). The Collateral is more particularly described in **Exhibit 5**, annexed hereto and incorporated fully herein by reference.

24. Borrower also executed, acknowledged, and delivered to Original Lender an Assignment of Leases and Rents, dated as of July 6, 2018 (the "**ALR**"). On August 14, 2018, Original Lender caused the ALR to be duly recorded against the Premises in the City Register's Office as CRFN 2018000272853. A true and correct copy of the ALR is annexed hereto as **Exhibit 6** and incorporated fully herein by reference.

25. The Note, the Mortgage, the ALR, and all related loan documents shall be referred

to collectively herein as the "**Loan Documents**."

**B. <u>Assignment of the Loan Documents to Interim Holders</u>**

26. Original Lender executed and delivered an Assignment of Mortgage dated August 1, 2018, and effective as of August 2, 2018 (the "**First Assignment of Mortgage**"), in favor of Morgan Stanley Mortgage Capital Holdings LLC ("**Interim Holder**"), pursuant to which Original Lender transferred to Interim Holder all of its right, title and interest in and to the Mortgage. By virtue of the First Assignment of Mortgage, Interim Holder became the owner and holder of the Mortgage. On September 18, 2018, the First Assignment of Mortgage was recorded in the City Register's Office as CRFN 2018000312617. A true and correct copy of the First Assignment of Mortgage is annexed hereto as **<u>Exhibit 7</u>** and incorporated fully herein by reference.

27. Original Lender executed and delivered an Assignment of Assignment of Leases and Rents dated August 1, 2018, and effective as of August 2, 2018 (the "**First Assignment of ALR**"), in favor of Interim Holder, pursuant to which Original Lender transferred to Interim Holder all of its right, title and interest in and to the ALR. By virtue of the First Assignment of ALR, Interim Holder became the owner and holder of the ALR. On September 18, 2018, the First Assignment of ALR was recorded in the City Register's Office as CRFN 2018000312618. A true and correct copy of the First Assignment of ALR is annexed hereto as **<u>Exhibit 8</u>** and incorporated fully herein by reference.

28. Original Lender executed and delivered an Allonge to the Note dated as of August 2, 2018 (the "**First Allonge**"), in favor of Interim Holder, pursuant to which Original Lender transferred to Interim Holder all of its right, title and interest in and to the Note. By virtue of the First Allonge, the original of which is firmly affixed by staple to the original Note as to become a part thereof, Interim Holder became the owner and holder of the Note with respect to the Loan

herein. A true and correct copy of the First Allonge is annexed to the copy of the Note annexed hereto (*see* Ex. 2) and incorporated fully herein by reference.

29. Original Lender also executed and delivered a General Assignment dated as of August 2, 2018, in favor of Interim Holder (the "**First General Assignment**"), pursuant to which Original Lender transferred to Interim Holder all of its right, title and interest in and to the balance of the Loan Documents. A true and correct copy of the First General Assignment is annexed hereto as **Exhibit 9** and incorporated fully herein by reference.

30. Interim Holder executed and delivered an Assignment of Mortgage dated August 1, 2018, and effective as of August 2, 2018 (the "**Second Assignment of Mortgage**"), in favor of Wilmington, pursuant to which Interim Holder transferred to Wilmington all of its right, title and interest in and to the Mortgage. By virtue of the Second Assignment of Mortgage, Wilmington became the owner and holder of the Mortgage. On September 18, 2018, the Second Assignment of Mortgage was recorded in the City Register's Office as CRFN 2018000312620. A true and correct copy of the Second Assignment of Mortgage is annexed hereto as **Exhibit 10** and incorporated fully herein by reference.

31. Interim Holder executed and delivered an Assignment of Assignment of Leases and Rents dated August 1, 2018, and effective as of August 2, 2018 (the "**Second Assignment of ALR**"), in favor of Wilmington, pursuant to which Interim Holder transferred to Wilmington all of its right, title and interest in and to the ALR. By virtue of the Second Assignment of ALR, Wilmington became the owner and holder of the ALR. On September 18, 2018, the Second Assignment of Mortgage was recorded in the City Register's Office as CRFN 2018000312621. A true and correct copy of the Second Assignment of ALR is annexed hereto as **Exhibit 11** and incorporated fully herein by reference.

32. Interim Holder executed and delivered an Allonge to the Note dated as of August 2, 2018 (the "**Second Allonge**"), in favor of Wilmington, pursuant to which Interim Holder transferred to Wilmington all of its right, title and interest in and to the Note. By virtue of the Second Allonge, the original of which is firmly affixed by staple to the original Note as to become a part thereof, Wilmington became the owner and holder of the Note with respect to the Loan herein. A true and correct copy of the Second Allonge is annexed to the copy of the Note annexed hereto (*see* Ex. 2) and incorporated fully herein by reference.

33. Interim Holder also executed and delivered a General Assignment dated as of August 2, 2018, in favor of Wilmington (the "**Second General Assignment**"), pursuant to which Interim Holder transferred to Wilmington all of its right, title and interest in and to the balance of the Loan Documents. A true and correct copy of the Second General Assignment is annexed hereto as **Exhibit 12** and incorporated fully herein by reference.

## C. Assignment of the Loan Documents to Plaintiff

34. Wilmington executed and delivered an Assignment of Mortgage dated August 3, 2026 (the "**Third Assignment of Mortgage**"), in favor of Plaintiff, pursuant to which Wilmington transferred to Plaintiff all of its right, title and interest in and to the Mortgage. By virtue of the Third Assignment of Mortgage, Plaintiff became the owner and holder of the Mortgage. On August 12, 2026, the Third Assignment of Mortgage was recorded in the City Register's Office as CRFN 2026000227360. A true and correct copy of the Third Assignment of Mortgage is annexed hereto as **Exhibit 13** and incorporated fully herein by reference.

35. Wilmington executed and delivered an Assignment of Assignment of Rents and Leases dated August 3, 2026 (the "**Third Assignment of ALR**"), in favor of Plaintiff, pursuant to which Wilmington transferred to Plaintiff all of its right, title and interest in and to the ALR. By

virtue of the Third Assignment of ALR, Plaintiff became the owner and holder of ALR. On August 12, 2026, the Third Assignment of ALR was recorded in the City Register's Office as CRFN 2026000227361. A true and correct copy of the Third Assignment of ALR is annexed hereto as **Exhibit 14** and incorporated fully herein by reference.

36. Wilmington also executed and delivered an Allonge to the Note (the "**Third Allonge**") in favor of Plaintiff, pursuant to which Wilmington transferred to Plaintiff all of its right, title and interest in and to the Note. By virtue of the Third Allonge, the original of which is firmly affixed by staple to the original Note as to become a part thereof, Plaintiff became the owner and holder of the Note with respect to the Loan herein. A true and correct copy of the Third Allonge is annexed to the copy of the Note annexed hereto (*see* Ex. 2) and incorporated fully herein by reference.

37. Wilmington also executed and delivered an Omnibus Assignment dated as of August 3, 2026, in favor of Plaintiff (the "**Omnibus Assignment**"), pursuant to which Wilmington transferred to Plaintiff all of its right, title and interest in and to the balance of the Loan Documents. A true and correct copy of the Omnibus Assignment is annexed hereto as **Exhibit 15** and incorporated fully herein by reference.

38. As of the date of this Verified Complaint, Plaintiff is the owner and holder of the Loan and Loan Documents and is in physical possession of the original Note with the First, Second, and Third Allonges all firmly affixed thereto by staple.

## D. Borrower's Default Under the Loan Documents

39. Section 10.1(a) of the Loan Agreement provides that it shall be an Event of Default if "Borrower shall fail to (A) pay when due (1) any sums which by the express terms of this Agreement and the other Loan Documents require immediate or prompt payment without any



LEGAL/51661433v1

grace period or (II) sums which are payable on the Maturity Date, or (B) pay within five (5) days when due (I) any monthly installment of principal and/or interest due under the Note and any amount required to be paid into the Reserve Funds or (II) pay within five (5) days when due any other sums payable under the Note, this Agreement or any of the other Loan Documents." *See* Ex. 2, § 10.1(a).

40. Borrower has defaulted under the terms of the Loan Documents and allowed Events of Default to occur and continue thereunder by failing to make the required monthly payments of interest due on April 1, 2026, and each Monthly Payment Date thereafter (collectively, the "**Payment Events of Default**").

41. The Mortgage provides that, upon the occurrence of an Event of Default, Plaintiff may "declare the entire Debt to be immediately due and payable" and "institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law." *See* Ex. 4, § 7.1(a), (b).

42. Upon the occurrence of any Event of Default, Section 2.2.3 of the Loan Agreement provides that interest on the entire Debt shall accrue at the Default Rate, which is defined in Section 1 of the Loan Agreement as "a rate per annum equal to the lesser of (i) the Maximum Legal Rate or (ii) four percent (4%) above the Interest Rate." *See* Ex. 2, §§ 1.1, 2.2.3.

43. Further, Section 2.3.4 of the Loan Agreement provides that "[i]f any principal required to be paid by Borrower under the Loan Documents (if any), interest or any other sum due under the Loan Documents, other than the payment of principal due on the Maturity Date, is not paid by Borrower on the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law (the "**Late Payment Charge**")." *See* Ex. 2, § 2.3.4.

44. The Loan Documents also provide that, upon the occurrence of an Event of Default, the holder of the Mortgage shall be entitled to collect all earnings, revenues, Rents, issues, profits and income of the Premises income and to have a receiver appointed, without notice, to take possession of the Premises and to collect the Rents and profits therefrom. *See* Ex. 4, § 7.1(g), (h).

45. The Loan Documents further provide that in the event the Mortgage is foreclosed in whole or in part or Plaintiff exercises any of its other remedies under the Loan Documents, Borrower shall be liable for all costs incurred for collecting, securing, or attempting to collect or secure any amounts due under the Loan Documents, including reasonable attorneys' fees and other legal costs. *See* Ex. 2, § 4.1.14.

46. By letter dated May 6, 2026 (the "**Notice of Default**"), Trimont LLC ("**Trimont**"), in its capacity as Master Servicer for Wilmington, sent a notice to Borrower in which it, *inter alia*, notified Borrower of the occurrence of Payment Events of Default on April 1, 2026, and May 1, 2026. Trimont also demanded in the Notice of Default that, Borrower pay Wilmington $516,617.82, consisting of the monthly payments due April 1, 2026, and May 1, 2026, plus late charges assessed on each payment, on or before June 1, 2026, the next Monthly Payment Date. A true and correct copy of the Notice of Default is annexed hereto as **Exhibit 16** and incorporated fully herein by reference.

47. Despite the demand from Plaintiff's predecessor-in-interest in the Notice of Default, Borrower did not make any payments to Wilmington to cure any of the Payment Events of Default detailed in the Notice of Default.

48. By letter dated July 30, 2026 (the "**Notice of Acceleration**"), Plaintiff, through counsel, *inter alia*, notified Borrower of the continuance of the Payment Events of Default, listed in the Notice of Default and of the occurrence of additional Payment Events of Default resulting

from Borrower's failure to make the required monthly payments of interest due on the June 1, 2026, and July 1, 2026 Monthly Payment Dates. The Notice of Acceleration also notified Borrower of Plaintiff's exercise of its right to declare the entire Loan immediately due and payable and demanded that Borrower immediately pay all amounts due under the Loan Documents. A true and correct copy of the Notice of Acceleration is annexed hereto as **Exhibit 17** and incorporated fully herein by reference.

49. Borrower has not cured any of the Payment Events of Default listed in the Notice of Default and the Notice of Acceleration, all of which are continuing as of the date of this Verified Complaint. Further, Borrower has not made any payments to Plaintiff toward the Loan or pursuant to the Loan Documents since the mailing of the Notice of Default and the Notice of Acceleration.

**FIRST CAUSE OF ACTION**
**(Mortgage Foreclosure)**

50. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 49 above, as though fully set forth at length herein.

51. The Loan Agreement, Note, Mortgage, ALR, and all other Loan Documents constitute valid and enforceable contracts between Plaintiff and Borrower.

52. Plaintiff, at all relevant times, performed its obligations under the Loan Documents.

53. Borrower has materially breached its obligations under the Loan Documents by failing to make the required monthly payments of interest due on the first day of each month from April 1, 2026, to the present. These breaches resulted in the occurrence and continuation of the Payment Events of Default. Plaintiff or its predecessor-in-interest, through the Notice of Default and the Notice of Acceleration, has provided notice to Borrower of the Payment Events of Default, all of which it has failed to cure.

54. As a result of the Events of Default there is now due, owing and payable to Plaintiff

under the Loan Documents: (i) $37,500,000.00 in principal; (ii) accrued and unpaid interest at the Interest Rate and the Default Rate; (iii) accrued Late Charges; (iv) prepayment charge and/or yield maintenance premium; (v) attorneys' fees, costs and expenses; and (vi) all other sums provided for under the Loan Documents.

55. Borrower is obligated to pay the indebtedness under the Mortgage and/or has, claims to have, or may have some possessory or other interest in or lien upon the Premises, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the lien of the Mortgage.

56. To protect the lien and security represented by the Mortgage during the pendency of this foreclosure action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the Premises. Plaintiff asks that any amount so incurred during the pendency of this foreclosure action, along with any other applicable fees, costs and advances incurred, be added, pursuant to the Mortgage and the Loan Documents, to its claim and be repaid to Plaintiff from the proceeds of the sale of the Premises, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Mortgage and the Loan Documents.

57. Any interest or lien which any defendant herein has, or may claim to have, in or upon the Premises, or any part thereof, is subject and subordinate to the lien of the Mortgage.

58. No other action or proceeding has been brought to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff respectfully requests judgment on its First Cause of Action against the defendants as follows:

a. Adjudging and decreeing the amounts due it as demanded in this Verified Complaint by means of Borrower's default under the Loan Documents;

b. Adjudging and decreeing that the defendants herein, all persons claiming under them, and all persons making any claim against the Premises which are the subject of this foreclosure action subsequent to the filing of the notice of pendency of this action be barred and foreclosed of and from any and all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Premises and each and every part and parcel thereof;

c. Adjudging and decreeing that (a) the Premises may be decreed or sold, according to law, subject to a statutory right of redemption in the United States of America, if any, subject to taxes, assessments, water charges and sewer rents, subject to any state of facts an accurate, currently dated survey would disclose, subject to zoning ordinances and local regulations, and subject to all mortgages, conditions, restrictions, liens, encumbrances, rights and interests, if any, that may be prior to the liens of the Loan Documents; (b) that the Premises may be sold in one or more parcels and in such order as determined by Plaintiff; (c) that the money resulting from said sale be brought into court; and (d) that Plaintiff be paid (1) the expenses of said sale, (2) the costs, allowances, and disbursements of this action, (3) the amounts due on the notes and mortgages, together with interest and late payment charges thereon as provided therein to the time of such payment, (4) all money advanced or paid by Plaintiff pursuant to any term or provision of any exhibit forming a part of this complaint, or to protect the liens of the Mortgage or the Premises, (5) Plaintiff's expenses of collection, including reasonable attorneys' fees, and (6) all other charges and liens, with interest upon said amounts from the dates of the respective payments or advances all so far as the amount of money properly applicable thereto will pay the same;

d. Adjudging and decreeing that Borrower be adjudged to pay any deficiency remaining under the Loan Documents after the application of the monies as aforesaid in accordance with Section 1371 of the New York Real Property Actions and Proceedings Law;

e. Adjudging and decreeing that Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective;

f. Adjudging and decreeing that in the event that Plaintiff possesses any other lien(s) against the Premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of

priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money or deficiency proceedings; and

g. Adjudging and decreeing that Plaintiff be granted such other and further relief as may be just and equitable.

**SECOND CAUSE OF ACTION**
**(Possession)**

59. Plaintiff repeats incorporates herein the allegations contained in Paragraphs 1 through 58 above, as though fully set forth at length herein.

60. By the terms of the Note, Mortgage, and other Loan Documents and by reason of Borrower's Events of Default under the terms of the Loan Documents, Plaintiff is entitled to immediate possession of the Premises and Collateral together with all improvements and appurtenances described in the Mortgage and in this Verified Complaint.

61. Borrower is now in possession of the Premises and Collateral and have deprived or may deprive Plaintiff of possession of the Premises and Collateral.

**WHEREFORE**, Plaintiff respectfully requests judgment on its Second Cause of Action against the defendants as follows:

a. Granting Plaintiff, its assignee, or the purchaser of the Premises and Collateral at the foreclosure sale possession of the Premises and Collateral;

b. Awarding Plaintiff damages for mesne profits;

c. Awarding Plaintiff its costs of suit, including reasonable attorneys' fees and costs; and

d. Awarding such other and further relief as the Court may deem just and proper.

**THIRD CAUSE OF ACTION**
**(Security Interest Foreclosure)**

62. Plaintiff repeats and incorporates herein the allegations contained in paragraphs 1 through 61 above as though fully set forth at length herein.

63. To perfect its interest in the Collateral, on August 14, 2018, Original Lender filed a Uniform Commercial Code Financing Statement with the City Register's Office as CRFN 2018000272854 (the "**NY UCC-1**"). The NY UCC-1 named Original Lender as the secured party and Borrower as the debtor. A true and correct copy of the NY UCC-1 is annexed hereto as part of **Exhibit 18** and incorporated fully herein by reference.

64. By Uniform Commercial Financing Statement Amendment, Original Lender assigned the NY UCC-1 to Interim Holder (the "**First NY UCC-3**"). On September 18, 2018, the First NY UCC-3 was filed with the City Register's Office as CRFN 2018000312619. A true and correct copy of the First NY UCC-3 is annexed hereto as part of **Exhibit 18** and incorporated fully herein by reference.

65. By Uniform Commercial Financing Statement Amendment, Interim Holder assigned the NY UCC-1 to Wilmington (the "**Second NY UCC-3**"). On September 18, 2018, the Second NY UCC-3 was filed with the City Register's Office as CRFN 2018000312622. A true and correct copy of the Second NY UCC-3 is annexed hereto as part of **Exhibit 18** and incorporated fully herein by reference.

66. By Uniform Commercial Financing Statement Amendment, Wilmington continued the effectiveness of the NY UCC-1 for another five years (the "**NY UCC Continuation**"). On May 31, 2023, the NY UCC Continuation was filed with the City Register's Office as CRFN 2023000134281. A true and correct copy of the NY UCC Continuation is annexed hereto as part of **Exhibit 18** and incorporated fully herein by reference.

67. By Uniform Commercial Financing Statement Amendment, Wilmington assigned the NY UCC-1 to Plaintiff (the "**Third NY UCC-3**"). On August 12, 2026, the Third NY UCC-3 was filed with the City Register's Office as CRFN 2026000227362. A true and correct copy of

the Third NY UCC-3 is annexed hereto as part of **Exhibit 18** and incorporated fully herein by reference.

68. To further perfect its interest in the Collateral, on July 31, 2018, Original Lender filed a Uniform Commercial Code Financing Statement with the Delaware Department of State ("**DE DOS**") as U.C.C. Initial Filing No. 2018 5240573 (the "**DE UCC-1**"). The DE UCC-1 named Original Lender as the secured party and Borrower as the debtor. A true and correct copy of the DE UCC-1 is annexed hereto as part of **Exhibit 19** and incorporated fully herein by reference.

69. By Uniform Commercial Financing Statement Amendment, Original Lender assigned the DE UCC-1 to Interim Holder (the "**First DE UCC-3**"). On September 18, 2018, the First DE UCC-3 was filed with the DE DOS as Amendment No. 2018 6433961. A true and correct copy of the First DE UCC-3 is annexed hereto as part of **Exhibit 19** and incorporated fully herein by reference.

70. By Uniform Commercial Financing Statement Amendment, Interim Holder assigned the DE UCC-1 to Wilmington (the "**Second DE UCC-3**"). On September 18, 2018, the Second DE UCC-3 was filed with the DE DOS as Amendment No. 2018 6434142. A true and correct copy of the Second DE UCC-3 is annexed hereto as part of **Exhibit 19** and incorporated fully herein by reference.

71. By Uniform Commercial Financing Statement Amendment, Wilmington continued the effectiveness of the DE UCC-1 for another five years (the "**DE UCC Continuation**"). On February 9, 2023, the DE UCC Continuation was filed with the DE DOS as Amendment No. 2023 1047827. A true and correct copy of the DE UCC Continuation is annexed hereto as part of **Exhibit 19** and incorporated fully herein by reference.

72. By Uniform Commercial Financing Statement Amendment, Wilmington assigned the DE UCC-1 to Plaintiff (the "**Third DE UCC-3**"). On August 10, 2026, the Third DE UCC-3 was filed with the DE DOS as Amendment No. 2026 6530691. A true and correct copy of the Third DE UCC-3 is annexed hereto as part of **Exhibit 19** and incorporated fully herein by reference.

73. Plaintiff holds a duly perfected security interest in the Collateral by virtue of the filed NY UCC-1, First, Second and Third NY UCC-3s, NY UCC Continuation, DE UCC-1, First, Second and Third DE UCC-3s, and DE UCC Continuation.

74. Borrower continues to be in default under the Loan Documents, including but not limited to the Payment Events of Defaults set forth above.

75. Pursuant to Section 9-601(1)(a) of the Uniform Commercial Code, Plaintiff has the right to foreclose upon the Collateral by reason of the Payment Events of Default described above.

76. Pursuant to the terms of the Loan Documents, Plaintiff elects to have the Collateral sold together with the Premises at a single public sale.

77. No person or entity possesses an interest in Collateral superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests judgment on its Third Cause of Action against the defendants as follows:

a. Adjudging that the Collateral be sold together with the Premises at a single public sale conducted by the sheriff to satisfy the amounts due to Plaintiff;

b. Barring and foreclosing the defendants of all equity of redemption in and to the Collateral;

c. Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

d. Awarding such other and further relief as the Court may deem just and proper.

**FOURTH CAUSE OF ACTION**
**(Appointment of a Receiver)**

78. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 77 above as though fully set forth at length herein.

79. Borrower has breached the Loan Documents and has allowed the Payment Events of Default to occur and remain uncured.

80. Section 7.1(h) of the Mortgage provides that upon the occurrence of any Event of Default under the Loan Documents, Borrower's license to collect the Rents generated by the Premises under Section 1.2 of the Mortgage "shall automatically be revoked" and Plaintiff may "require Borrower to vacate and surrender possession of the Property to [Plaintiff] or to such receiver" as may be appointed for the Premises. *See* Ex. 4, § 7.1(h).

81. Section 7.1(g) of the Mortgage provides that Plaintiff may apply for the appointment of a receiver for the Premises upon the occurrence of any Event of Default "without notice and without regard for the adequacy of the security for the Debt." *See* Ex. 4, § 7.1(g).

82. Plaintiff's investigation into the Premises has disclosed several conditions that raise serious questions about the financial status of the Premises and Collateral and Plaintiff's security for the Loan. Specifically, Plaintiff discovered the following:

(a) The Premises was 43% occupied in 2023 and this occupancy rate has dropped to 28% over the last two fiscal years;

(b) Borrower has not signed any new leases for any portion of the Premises in the last three years;

(c) The lead tenant of the Premises has not paid rent to Borrower in many months and has a lease scheduled to expire in September 2026 that Borrower has made no efforts to renew;

(d) If the lead tenant vacates the Premises in September 2026, the occupancy of the Premises will drop again, this time to just 9%;

(e) The balance of the leasing reserve for the Loan is insufficient to maintain an office building in midtown Manhattan such as the Premises.

83. The appointment of a receiver is necessary to protect and preserve the value of Plaintiff's security because of the likelihood of Plaintiff's interests in the Premises and Collateral being irreparably harmed should the Borrower continue to manage the Property in the way it has since the occurrence of the first of the Payment Event of Default known to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests judgment on its Fourth Cause of Action against Borrower as follows

a. Appointing a receiver to collect the rents and manage the Premises;

b. Directing all tenants in possession of the Premises to pay the receiver all rents;

c. Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

d. Awarding such other and further relief as the Court may deem just and proper.

Dated: New York, New York
August 14, 2026

**ALSTON & BIRD LLP**

By: */s/ Richard J. Galati, Jr.*
Richard J. Galati, Jr.
Olivia Corn
90 Park Avenue
New York, New York 10016
(212) 210-9400
richard.galati@alston.com
olivia.corn@alston.com
*Attorneys for Plaintiff*

# VERIFICATION

I, Jorge Rodriguez, Director – Special Servicing and Workout Services of Torchlight Investors LLC, the parent company of Torchlight Loan Services, LLC, Special Servicer for Plaintiff BNK 2018-BNK13 LLC 10 East 34th Street LLC, hereby verify that I have authorized the filing of this Verified Complaint, that I have reviewed the allegations made in the Verified Complaint, that I know the contents thereof, and that they are true to my knowledge, except as to matters alleged on information and belief, and as to those matters I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2026

JORGE RODRIGUEZ

# SCHEDULE A

## Environmental Control Board Judgments

| Violation No. | Original Amount | Decision Date | ECB Book Date | Judgment Date |
|---|---|---|---|---|
| 210149318 | $300.00 | 9/28/2020 | 1/31/2021 | 11/12/2020 |
| 39016224Z | $625.00 | 1/22/2021 | 4/30/2021 | N/A |